IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARCUS JOHNSON            :        CIVIL ACTION
                         :
          v.             :
                         :
JOHN PALAKOVICH, et al.   :        NO. 05-1073

<u>ORDER</u>

AND NOW, this 27th day of June, 2006, upon careful and
independent consideration of Marcus Johnson's <u>pro se</u> petition for
writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket #1)
and his amendments, memorandum of law, and supplements in support
thereof, the Commonwealth's response to his petition, Johnson's
reply thereto, his motion for leave to file supplemental
arguments (docket entry #29), the Report and Recommendation of
the Honorable Timothy R. Rice (docket entry # 35), Johnson's
objections to the Report and Recommendation and his supplements
thereto, and the Court finding that:

(a)  Johnson advances thirteen grounds for habeas
relief in his § 2254 petition,[1] some of which he presented to the

_____

[1] Johnson raises the following thirteen claims: (1) the
trial court erred in admitting the preliminary hearing testimony
of robbery victim Richard Gommer; (2) the trial court erred in
failing to sever the four separate robbery cases; (3) the trial
court erroneously admitted an inculpatory statement Johnson made
to police without his Miranda rights; (4) trial counsel rendered
ineffective assistance for failing to call an alibi witness; (5)
trial counsel rendered ineffective assistance for failing to call
a witness to authenticate a composite sketch; (6) the prosecutor
made highly prejudicial comments during his closing argument; (7)
the trial court erred in failing to grant a mistrial after
numerous acts of prosecutorial and police misconduct; (8) the
prosecutor withheld information concerning a lineup which took
place while Johnson was incarcerated; (9) the trial court erred
by failing to properly instruct the jury on the burden of proof;
                                        (continued...)

Pennsylvania state courts;

(b)   A federal court only addresses claims that the petitioner has fairly presented to the state courts, see Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b) and O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999));

(c)   This rule of exhaustion is based on the principle of comity, which "dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief," O'Sullivan, 526 U.S. at 844;

(d)   A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented," 28 U.S.C. § 2254(c);

(e)   We shall not review claims seven, ten, eleven, and twelve because Judge Rice correctly concluded that Johnson failed

---

[1]   (...continued)
(10) the jury was improperly selected and tainted in violation of the Sixth and Fourteenth Amendments; (11) trial counsel rendered ineffective assistance by: failing to investigate or present a viable defense, failing to object to a tainted jury panel, failing to object to hearsay testimony given by Detective Donald Molineux, and failing to produce a surveillance video expert to rebut the witnesses of the Commonwealth; (12) the trial court erred in failing to call a new jury panel to replace the tainted one; and (13) direct appellate counsel rendered ineffective assistance by failing to raise, preserve, and exhaust the claims presented in this habeas petition.

to fairly present them to the state courts and they are therefore procedurally defaulted,[2] see O'Sullivan, 526 U.S. at 842 ("the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition");

(f)   Judge Rice also correctly concluded that Johnson's third, fourth, and ninth claims are properly exhausted, so we shall address those claims;

(g)   Our review of the state court's adjudication of these claim is deferential and precludes a grant of habeas relief unless the court's ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1)-(2);

(h)   We presume that the state court's factual findings are correct unless Johnson can rebut this presumption by clear and convincing evidence, see 28 U.S.C. § 2254(e)(1);

---

[2] We cannot excuse these defaults because Johnson has failed to show "cause for the default and actual prejudice" or a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Moreover, Judge Rice correctly found that claims ten, eleven, and twelve would be untimely were Johnson to raise them in a new petition filed pursuant to Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S.A. §§ 9541, et seq.  See Report and Recommendation 4.

(i)  A state court's decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent," <u>Williams v. Taylor</u>, 529 U.S. 362, 406-07 (2000);

(j)  Moreover, "§ 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt," <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002) (internal quotation and citation omitted);

(k)  A state court need not cite to, or even be aware of, the governing Supreme Court precedent provided "neither the reasoning nor the result of the state-court decision contradicts" the precedent, <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002);

(l)  If "the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable," <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003);

(m)  Whether or not we would reach the same result as the state court is irrelevant, so long as its decision is not "objectively unreasonable," <u>see Woodford</u>, 537 U.S. at 27;

(n)  The burden of establishing objective unreasonableness is Johnson's, <u>see id.</u> at 25;

4

(o)  Turning now to the exhausted claims, Johnson's third habeas claim is that the trial court erroneously admitted an inculpatory statement he made to Detective Marano without having received the warnings provided in Miranda v. Arizona, 384 U.S. 436 (1966);

(p)  On October 29, 1998 Johnson was in the custody of the Philadelphia Police Department being interviewed by Detective Marano as a suspect in about twenty armed robberies, see N.T. 183, 188:23-189:12 (Mar. 14, 2000);[3]

(q)  Detective Marano told Johnson that he did not have to speak with Detective Marano if he did not want to, he could have a lawyer present, and anything he said could be used against him, see N.T. 184:16-19 (Mar. 14, 2000), but Detective Marano did not read Johnson the formal Miranda warnings or obtain his written waiver of his rights, see N.T. 187:8-23 (Mar. 14, 2000); Commonwealth v. Marcus Johnson, No. 98-6098, 7000-01, 99-576, slip op. at 8 (Pa. Ct. Common Pl. Dec. 29, 2000);

(r)  Detective Marano testified that he showed Johnson photographs made from surveillance video taken during the robberies and told him there was more video evidence, and that Johnson responded:

> [M]onths from now when we go to trial, they're not going to see this.  I'm going to have some meat on my

---

[3] The jury did not learn why Detective Marano was interviewing Johnson, nor that he worked for the Philadelphia Police Department.  See N.T. 197:19-198:10, 201:24-203:19 (Mar. 14, 2000).

> bones.  I'm going to be cleaned up and they're not
> going to see the same person on that tape as is sitting
> in front of them.

N.T. 201:10-14 (Mar. 14, 2000);

    (s)  On direct appeal, the Superior Court found that if
Johnson's inculpatory statement had been obtained in violation of
<u>Miranda</u>, the error was harmless because of the overwhelming
evidence of Johnson's guilt:

> Even if we were to assume that the statement offered by
> Detective Marano was erroneously admitted, we would not
> conclude that appellant was entitled to relief.  The
> evidence of appellant's guilt in this case is so
> overwhelming that admission of the statement was
> harmless.  Every victim identified appellant as the
> perpetrator, both in a photo array prior to trial and
> in court during trial.  Further, the videotapes of the
> robberies were shown to the jury.  In light of the
> tremendous amount of evidence establishing appellant's
> guilt, we find that admission of Detective Marano's
> testimony was harmless.

<u>Commonwealth v. Johnson</u>, No. 1888-91 EDA 2000, slip op. at 4 (Pa.
Super. Ct. Aug. 29, 2001);

    (t)  "[T]he standard for determining whether habeas
relief must be granted is whether the . . . error had substantial
and injurious effect or influence in determining the jury's
verdict," <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)
(internal quotation and citation omitted);

    (u)  We agree with Judge Rice that the Superior Court
properly analyzed the prosecution's case absent Detective
Marano's testimony and consistent with the Supreme Court's
standard, and that it was objectively reasonable for the Superior
Court to find that Detective Marano's testimony did not

contribute to the jury finding Johnson guilty of the four robberies;

(v)  Johnson's fourth claim is that trial counsel rendered ineffective assistance by failing to call Michael King as an alibi witness;

(w)  King submitted an affidavit stating that he had told trial counsel several months before Johnson's trial that he was ready to testify that Johnson had been with him at his home at the time of one of the robberies, but that trial counsel never subpoened him to testify or told him of the trial date, see Johnson's Mem. in Supp. of Petition, Appendix B;

(x)  Strickland v. Washington, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims, and Pennsylvania courts apply the same standard, see Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); Commonwealth v. Pierce, 527 A.2d 973, 976 (Pa. 1987);

(y)  Strickland provides that a convicted defendant challenging the effectiveness of his attorney's assistance must prove that the attorney failed to provide "reasonably effective assistance," which he can do by satisfying two criteria:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687;

(z)  To succeed on this claim, Johnson must show that his counsel's representation "fell below an objective standard of reasonableness," id. at 688;

(aa) Our review of his counsel's action "must be highly deferential," and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. at 689;

(bb) We do not evaluate whether the trial was perfect or whether counsel could have made better decisions; instead, we evaluate whether the trial was constitutionally fair and whether counsel was constitutionally adequate, see Marshall v. Hendricks, 307 F.3d 36, 91 (3d Cir. 2002);

(cc) Moreover, it is not enough for Johnson to convince us that, in our independent judgment, the state court incorrectly applied Strickland, but rather he has the burden of showing that the state court applied Strickland in an objectively unreasonable manner, see Woodford, 537 U.S. at 24-25;

(dd) On appeal of the denial of Johnson's petition filed pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), the Superior Court found that Johnson had failed to establish that counsel was ineffective:

> Johnson fails to demonstrate that trial counsel's
> failure to call King resulted in prejudice.  Generally,
> a claim of ineffective assistance of counsel mandates
> relief where the defendant establishes "that there is a
> reasonable probability that, but for counsel's
> unprofessional errors, the results of the proceedings
> would have been different."  *Pierce*, 527 A.2d at 974

8

> (quoting **Strickland v. Washington**, 466 U.S. 668, 694
> (1984)).  The record demonstrates that prior to trial,
> the victims of each robbery picked Johnson's photograph
> out of a photographic array.  At trial, the victims of
> each robbery positively identified Johnson.  Moreover,
> Johnson was caught on the Wawa stores' videotape
> surveillance system during the commission of the
> crimes.  In light of the evidence of Johnson's
> participation in the crimes charged, we conclude that
> trial counsel was not ineffective for refusing to
> present the testimony of Johnson's alibi witness.

Commonwealth v. Johnson, No. 2593-96 EDA 2002, slip op. at 9 (Pa.
Super. Ct. June 30, 2003);

(ee) We agree with Judge Rice that the Superior Court
properly evaluated prejudice by considering the totality of the
evidence at trial, see Strickland, 466 U.S. at 695, and that
the court's adjudication of this claim was not objectively
unreasonable;

(ff) Therefore, Johnson's ineffective assistance of
counsel claim fails;

(gg) Johnson's ninth claim is that the trial court
judge failed to properly instruct the jury on the burden of
proof;

(hh) While initially instructing the jury, the judge
said:

> May I suggest to you this -- it is your duty as jurors
> to determine if in fact those crimes did take place.  I
> suggest to you, although this is entirely for your
> determination and your conclusions.  That it is pretty
> clear from the evidence that crimes took place.  What
> is disputed is the identity of the person who committed
> those crimes.  That of course is for your
> consideration.  You should consider all the evidence
> that is relevant to the question of who committed the
> crimes. . . .  Who is the person that committed these

offenses.  That is what is being really contested in
this case.  You must decide whether the Commonwealth
has proven all of the elements of the various offenses
beyond a reasonable doubt, and you must determine
whether or not they have proven that this Defendant is
the person that committed those offenses.

N.T. 62:14-25, 63:6-14 (Mar. 16, 2000);

(ii) When defense counsel objected, the court clarified

to the jury that its comments on facts and evidence were "not

controlling at all" and that:

You should use your judgment in determining whether or
not all of the elements of these various crimes have
been proven beyond a reasonable doubt, and whether the
Defendant has been proven to be the perpetrator of a
crime or crimes as charges [sic] in this case.

N.T. 68:1-8 (Mar. 16, 2000);

(jj) On direct appeal, the Superior Court considered

Johnson's claim that the court's clarification did not remove the

taint of the original statement and concluded that:

The trial court's instruction simply reflected the
evidence presented at trial and appellant's theory of
the case.  Appellant's counsel never suggested that the
crimes did not occur, nor could he, since the
surveillance tapes showed otherwise.  Rather, the
defense strategy in this case was to challenge the
identity of the perpetrator.

Appellant claims that the trial court's statement
establishes that the court "did not remain impartial
and invaded the province of the jury."  Appellant's
Brief at 9.  Upon review of the charge as whole, we
reject appellant's claim and find no abuse of
discretion or error of law.  Instead, we conclude that
the court's instruction accurately, clearly and
adequately reflected the applicable law and so no
relief is due.

Commonwealth v. Johnson, No. 1888-91 EDA 2000, slip op. at 5-6

(Pa. Super. Ct. Aug. 29, 2001);

10

(kk) The Superior Court's analysis was consistent with Supreme Court jurisprudence that jury instructions should be considered in their entirety, see <u>Victor v. Nebraska</u>, 511 U.S. 1, 5, 14-17 (1994);

(ll) We therefore agree with Judge Rice that the Superior Court's determination was neither contrary to, nor an unreasonable application of, Supreme Court precedent;

(mm) Judge Rice also concludes that Johnson's first, second, fifth, sixth, and eighth claims are procedurally defaulted, but in accordance with the reasoning our Court of Appeals used in <u>Holiday v. Varner</u>, No. 05-1451, 2006 WL 1026204 (3d Cir. Apr. 19, 2006), we find it proper to reach the merits of these claims;[4]

(nn) We undertake this analysis because Johnson presents a thirteenth claim of ineffective assistance of counsel claim:  "Direct Appeal counsel rendered ineffective assistance" because "counsel failed to raise, preserve and exhaust[] the meritorious claims presented in the Petitioner's Writ of Habeas Corpus," Amendment to Petition for Writ of Habeas Corpus at unnumbered page 2;

---

[4] <u>Holiday</u>, a non-precedential opinion, was issued after the parties had briefed this action and only five days before the Report and Recommendation came out.  It is not discussed in the Report and Recommendation.  However, given the similarities between <u>Holiday</u> and this case, as discussed herein, we find its reasoning on the issue of procedural default to be persuasive.

(oo) He had raised a similar claim before the Superior
Court when he appealed the denial of his PCRA petition: "Whether
all prior and appellate counsel were ineffective for failing to
properly investigate and present the issues in this brief,"
Commonwealth v. Marcus Johnson, No. 2593-96 EDA 2002, slip op. at
4 (Pa. Super. Ct. June 30, 2003);

(pp) The Superior Court found that:

> Johnson's broad contention that all prior counsel were
> ineffective is inadequate to meet the affirmative
> burden to rebut the presumption that prior counsel was
> competent and effective. **See Commonwealth v. Jones,**
> 811 A.2d 994, 1003 (Pa. 2002) (concluding that a mere
> boilerplate allegation that counsel was ineffective,
> does not entitle a defendant to any relief).

Id. at 7-8;

(qq) In Holiday, our Court of Appeals addressed a
similar state court decision regarding broad ineffective
assistance of counsel claims made pursuant to a PCRA petition and
found that the decision did not bar a federal habeas court from
reviewing the merits of the claims presented to the state court;

(rr) There, the Pennsylvania Superior Court, ruling on
a claim that appellate counsel rendered ineffective assistance,
found that "[petitioner's] bald allegations of direct appeal
counsel's ineffectiveness cannot undo the waiver of the
underlying claims," Holiday, 2006 WL 1026204, at *2;

(ss) The Report and Recommendation adopted by our
district court concluded that review of the claim against
appellate counsel was procedurally barred because the petitioner

12

waived his claim by failing to comply with the pleading requirements for layered ineffectiveness of counsel claims, see id.;

     (tt) The Court of Appeals found that the district court erred in finding petitioner's ineffective assistance claims against appellate counsel were procedurally defaulted and explained that:

> Here, the Pennsylvania Superior Court did not clearly or expressly indicate that it considered [petitioner's] ineffective assistance claims with respect to appellate counsel waived as insufficiently pled.  On the contrary, it focused on whether the "boilerplate allegations" were "insufficient to prove an ineffectiveness claim under the PCRA," i.e., an evaluation of the merits that a federal habeas court is free to review.  In other words, the court seemed to rely on appellant's failure to adduce adequate *proof* before the PCRA court.

Id. at *2, 3;

     (uu) The Court of Appeals also found the procedural rule for pleading a layered ineffectiveness claim on a state collateral review was not clearly established when petitioner filed his PCRA petition on March 12, 2001, and the rule did not become clear until September 29, 2003, when the Supreme Court of Pennsylvania decided Commonwealth v. McGill, 832 A.2d 1014, 1022 (Pa. 2003), see Holiday, 2006 WL 1026204, at *3-4;

     (vv) As in Holiday, the Superior Court here focused on the sufficiency of the allegations to prove an ineffective assistance claim, an evaluation of the merits that we may review;

(ww) Before the Superior Court, Johnson charged all prior counsel -- including direct appellate counsel -- with ineffective assistance for not raising the claims he advanced on appeal, and in his habeas petition he again charges appellate counsel with ineffective assistance, but this time with respect to the claims made in this petition;

(xx) Therefore, with respect to the habeas claims that we have not already addressed herein, we shall review on the merits those habeas claims that Johnson also raised before the state court in his PCRA appeal -- i.e., habeas claims one, two, five, six, and eight -- to determine if direct appellate counsel was indeed ineffective for failing to raise them;[5]

---

[5] Johnson also argues, apparently in the alternative, that he "was well aware that the ineffective assistance of counsel claim was procedurally defaulted," but that this default should be excused because he can satisfy the "cause and prejudice" standard. Objections at 3. Even if we accept that the ineffective assistance claim -- as well as claims one, two, five, six, and eight -- are procedurally defaulted, and then apply the cause and prejudice standard, the result here would not change.

"[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000). For us to review any claim that was procedurally defaulted under state law, Johnson must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show "cause," Johnson must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," such as, for instance, "that the factual or legal basis for a claim was not reasonably
(continued...)

(yy) Claim one is that the trial court erred in admitting the preliminary hearing testimony of Richard Gommer, a Wawa employee and robbery victim, who was unavailable during trial due to a severe illness that was carefully documented to the trial court, see N.T. 8-17 (Mar. 14, 2000);

(zz) Johnson contends that the introduction of Gommer's preliminary hearing testimony at the trial violates Crawford v. Washington, 541 U.S. 36 (2004) (holding testimonial statements admissible at trial only if declarant is unavailable and defendant had prior opportunity to cross-examine);[6]

---

[5] (...continued)
available to counsel . . . . or that some interference by officials . . . made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotations and citations omitted).

Johnson has not alleged that some external, objective factor prevented his direct appellate counsel from raising and exhausting the habeas claims he now advances.  Also, as discussed herein, the procedurally defaulted claims lack merit, so Johnson cannot show there was actual prejudice or a fundamental miscarriage of justice.  Therefore, Johnson has failed to show cause and prejudice for the ineffective assistance claim, so that claim cannot be used to establish cause for any other procedurally defaulted claims.

[6] Our Circuit has not held whether Crawford applies retroactively to cases on collateral review, but the overwhelming weight of authority counsels that it does not.  See Lave v. Dretke, 444 F.3d 333, 336 (5th Cir. 2006); Bintz v. Bertrand, 403 F.3d 859, 867 (7th Cir. 2005); Murillo v. Frank, 402 F.3d 786, 790 (7 Cir. 2005); Dorchy v. Jones, 398 F.3d 783 (6th Cir. 2005); Brown v. Uphoff, 381 F.3d 1219, 1227 (10 Cir. 2004); Mungo v. Duncan, 393 F.3d 327, 336 (2d Cir. 2004).  Only the Ninth Circuit has held that it does apply retroactively to cases on collateral review, see Bockting v. Bayer, 399 F.3d 1010, 1021 (9th Cir. 2005), and just last month the Supreme Court granted a petition for writ of certiorari to address that question, see Whorton v. Bockting, 126 S.Ct. 2017 (May 15, 2006) (granting certiorari for
(continued...)

15

(aaa) At the preliminary hearing, Johnson was present, represented by counsel, and had an opportunity to fully cross-examine Gommer, who had unequivocally identified Johnson as the perpetrator, see Commonwealth v. Johnson, 98-6098, 7000-01, 99-576, slip op. at 4-5 (Pa. Ct. Common Pl. Sept. 26, 2002);

(bbb) Therefore, Judge Rice correctly concluded that claim one is meritless;

(ccc) Claim two is that the trial court erred in failing to sever the four separate robbery cases;

(ddd) "[T]he propriety of consolidating separate indictments for trial is a matter of discretion with the trial judge, and the exercise of this discretion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant," Commonwealth v. Morris, 425 A.2d 715, 718 (Pa. 1981);

(eee) "[O]ffenses may be joined or indictments may be consolidated where the separate offenses show the defendant's unusual or distinctive modus operandi," meaning that "there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others," id. at 720-21;

---

[6] (...continued)
Bockting v. Bayer).

16

(fff) Johnson contends there was "no reasonable cause for the trial court to not sever the crimes" and that these crimes had "no 'distinctive' traits, but were the types of robberies which are committed every day by hundreds of individuals," Johnson's Supplement to Mem. of Law in Supp. of Petition 10;

(ggg) However, the four robberies of the Wawa convenience stores took place within a twenty-one-day period, three of them at the same Wawa location within a nine-day period, and each involved a man -- who was not wearing a mask or glasses -- threatening a Wawa cashier with a gun and demanding money from the cash register, but not from any customers or the store safe, see Commonwealth v. Marcus Johnson, No. 98-6098, 7000-01, 99-576 (Ct. Common Pl. Dec. 29, 2000) 1-2; N.T. 140:3-13 (Mar. 14, 2000), 17:1-4, 31:17-21 (Mar. 15, 2000);

(hhh) Any minor differences in the crimes -- i.e., the robber twice used a handgun, once used a shotgun, and once was accompanied by an accomplice who used a shotgun -- are overshadowed by the notable similarities and the compressed time frame in which the crimes occurred, so we cannot find that the trial court manifestly abused its discretion, nor that Johnson suffered prejudice and clear injustice;

(iii) Claim five is that trial counsel rendered ineffective assistance for failing to call Detective Brown to authenticate a composite sketch -- for which two witnesses had

provided information and that allegedly did not look like Johnson
-- and that as a result the trial court did not allow the jury to
see the sketch;

(jjj) In denying defense counsel's motion to admit the
sketch, the trial court was concerned with a number of factors,
including the lack of evidence that the two witnesses -- one
unavailable because of illness and the other for unknown reasons
-- had seen the sketch or agreed that it looked like the person
they saw, and the court did not state that Detective Brown's
presence would alter the calculus, see N.T. 118:19-25, 119:11-12
(Mar. 15, 2000);

(kkk) Claim five also fails because Strickland's
prejudice prong cannot be satisfied on these facts, where the
jury watched surveillance video of the robberies, viewed
photographs captured from the video, and heard from people who
witnessed the robberies and then identified Johnson in photo
arrays and in the courtroom;

(lll) Johnson's sixth claim is that the prosecutor
improperly vouched for the witnesses' ability to identify the
person who robbed the stores because the prosecutor told jurors
that he would never forget the face of the doctor who told him
that his father had died;

(mmm) While it is improper for a prosecutor to express
a personal belief or opinion as to the credibility of a witness,
reversible error occurs only where the "unavoidable effect of

18

such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict," <u>Commonwealth v. Anderson</u>, 461 A.2d 208, 211 (Pa. 1983) (citation omitted);

(nnn) Moreover, "not every intemperate or improper remark by the prosecution requires a new trial," <u>Commonwealth v. Johnson</u>, 533 A.2d 994, 996 (Pa. 1987);

(ooo) A court assessing allegations of prosecutorial misconduct should weigh the severity of the misconduct, the effect of any curative instruction, and the quantum of evidence against the defendant, <u>see</u> <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001);

(ppp) Even if we accept Johnson's argument that the prosecutor improperly used his story to vouch for the witnesses' ability to remember a face they saw in a traumatic situation, the record is clear that -- after the prosecutor's story -- the trial court gave proper, detailed instructions to the jurors about their responsibility to assess each witness's credibility based on their own observations and then to decide how much weight, if any, to attach to each witness's testimony, <u>see</u> N.T. 48:7-50:22 (Mar. 16, 2000);

(qqq) Also, as already discussed, the evidence against Johnson was very strong;

(rrr) On these facts, we do not find that the prosecutor's comments so prejudiced the jury that they could not render a true verdict, so the seventh claim fails;

(sss) Johnson's eighth claim is that the prosecutor withheld information concerning a lineup that Johnson participated in on November 19, 1998, while he was being held at the Current Fromheld Correctional Facility ("CFCF"), see Johnson's Additional Ex. K;

(ttt) A suspect has a constitutional right to the presence of counsel at a post-charge lineup, see Moore v. Illinois, 434 U.S. 220 (1977); United States v. Wade, 388 U.S. 218 (1967);

(uuu) Johnson was arraigned on March 18, 1999 for three of the robberies and on April 1, 1999 for the fourth robbery, and the four Informations in which he was charged with the robberies were filed on April 1, 1999, see Docket Entries of Delaware County Court of Common Pleas, Nos. 98-6098, 98-7000, 98-7001, 99-576; Criminal Informations for Nos. 98-6098, 98-7000, 98-7001, 99-576;

(vvv) Therefore, the lineup of November 19, 1998 occurred before Johnson had the right to counsel's presence in this matter;[7]

---

[7] Moreover, the witness at Johnson's lineup, see Johnson's Ex. K CFCF Stand Up Request Form, was not one of the witnesses at his trial, so there is no suggestion that the lineup witness was involved in this matter.

(www) Because claims one, two, five, six, and eight lack merit, direct appellate counsel's decision not to raise these issues cannot be deemed deficient, nor was Johnson's defense prejudiced, so Johnson's thirteenth claim fails;

(xxx) In sum, Judge Rice correctly determined that Johnson's petition should be denied with prejudice, and we shall overrule Johnson's objections and approve and adopt the Report and Recommendation to the extent described herein; and

(yyy) Finally, Johnson has not made a substantial showing of the denial of a constitutional right, so we shall not issue a certificate of appealability, see 28 U.S.C. § 2253(c)(3),

It is hereby ORDERED that:

1.   Johnson's motion for leave to file supplemental arguments is GRANTED;

2.   Johnson's objections are OVERRULED;

3.   The Report and Recommendation is APPROVED and ADOPTED to the extent described herein;

4.   The petition for writ of habeas corpus is DENIED;

5.   We DECLINE to issue a certificate of appealability; and

6.   The Clerk shall CLOSE this case statistically.


BY THE COURT:

/s/ Stewart Dalzell, J.